FILED
FEB - 7 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>I. LEWIS LIBBY,<br>    also known as "Scooter Libby,"<br><br>        Defendant.<br>_____<br><br>ANDREA MITCHELL,<br><br>        Movant. | ~~Criminal No. 05-394 (RBW)~~<br><br>CASE NUMBER 1:07MS00057<br>JUDGE: Reggie B. Walton<br>DECK TYPE: Miscellanous<br>DATE STAMP: 02/07/2007 |

## MOTION OF NON-PARTY ANDREA MITCHELL TO QUASH SUBPOENA IN PART AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Non-party Andrea Mitchell, a correspondent for NBC News ("NBC"), respectfully moves pursuant to Federal Rule of Criminal Procedure 17 to quash in part the subpoena for trial testimony served upon her by defendant I. Lewis Libby ("Defendant"), and submits this memorandum of points and authorities in support of that motion.

### BACKGROUND

On December 20, 2006, Defendant served a subpoena *ad testificandum* on Ms. Mitchell for her testimony at Defendant's trial. Defendant's counsel agreed to provide Ms. Mitchell's counsel advance notice in the event Defendant decided to call her to testify and Ms. Mitchell reserved the right to move to quash the subpoena.

Defendant's counsel advised Ms. Mitchell's counsel late Monday, February 5, 2007, that she would be called to testify. At the same time, counsel for Defendant represented that he plans to question Ms. Mitchell primarily about the following two subjects: (1) a conversation she had

RECEIVED
FEB - 7 2007
NANCY MAYER WHITTINGTON, CLERK

1

with Defendant that he asserts took place sometime after July 6, 2003; and (2) a statement she made on the October 3, 2003 broadcast of the CNBC program *Capital Report*. Defendant's counsel further represented that defendant is not seeking production of any documents from Ms. Mitchell, and that she will not be questioned about any communications she had with sources other than her aforementioned conversation with Defendant.

Earlier in this proceeding, Defendant subpoenaed Ms. Mitchell and NBC to produce a wide range of documents, including all documents reflecting communications between Ms. Mitchell and a number of individuals concerning former Ambassador Joseph Wilson prior to July 14, 2003, all documents that purported to discuss or explain her statements on *Capital Report*, and all documents reflecting or referring to any conversation between Ms. Mitchell and Defendant between July 6 and October 3, 2003. Ms. Mitchell and NBC moved to quash these subpoenas pursuant to Rule 17(c). The Court in large part quashed the subpoenas, holding that Defendant's request for documents reflecting communications about Ambassador Wilson was "nothing more than a fishing expedition," and that there was "no plausible argument" that Ms. Mitchell's handwritten notes of her conversation with Defendant "are relevant to this case." *United States v. Libby*, 432 F. Supp. 2d 26, 40 (D.D.C. 2006). While a handful of emails concerning the *Capital Report* statements could be "technically responsive" to that subpoena, the Court concluded that the only circumstance in which they might be admissible was if Ms. Mitchell testified and her testimony conflicted with their contents. *Id.* at 41. Accordingly, the Court concluded that the documents sought did not "fall within the category of documents producible under Rule 17(c)." *Id.*

## **ARGUMENT**

The subpoena for Ms. Mitchell's testimony should be quashed to the extent that Defendant seeks to elicit testimony from her that is inadmissible in evidence. Ms. Mitchell takes Defendant at his word regarding the subjects and materials that he will not pursue. Relying on these representations, Ms. Mitchell does not object to testifying about her July 2003 conversation with Defendant. However, Ms. Mitchell brings this motion to limit the scope of Defendant's inquiries to exclude questions regarding her statements on *Capital Report*. Allowing Ms. Mitchell to be questioned about them would constitute an abuse of the Federal Rules of Evidence.

In his opening statement, counsel for Defendant explained the purpose for which he seeks to elicit testimony from Ms. Mitchell about her statements on *Capital Report*. Specifically, he asserted:

> Now, Andrea Mitchell, you'll learn, she goes on TV, on October the 3rd, 2003, on a TV show, and Andrea Mitchell says on a TV show that it was widely known among the reporters who covered the intelligence community that Ambassador Wilson's wife worked at the CIA, widely known before July 14th by certain reporters, including herself.
>
> OK? She says it on TV that she and other reporters knew before July 14. And, as I said, if Andrea Mitchell knew, dog gone it, Tim Russert knew.
>
> And its very interesting because you'll find later on, Ms. Mitchell retracts her statement after Mr. Libby had been indicted. Oh, I know I said it on TV. I must have made a mistake. I don't know what I was thinking.

Transcript, Jan. 23. 2007, at 17 (p.m. session).

As Defendant's counsel expressly conceded in his opening statement, Ms. Mitchell has publicly stated on multiple occasions, including in exhibits submitted to the Court by Defendant, *see* I. Lewis Libby's Consolidated Response to Motions to Quash (Docket No. 7 in 05-MS-126), Exs. U & V, she did not know that Ambassador Wilson's wife worked for the CIA prior to July

3

14 and did not share any such information with Mr. Russert. And, as Defendant has also expressly conceded, *id.* at 29, Ms. Mitchell has repeatedly and unambiguously made this statement on the public record:

> I've gone back and talked to the people that I was working with at the time. *I know that I didn't know about the wife.* I knew that there was an envoy and we were working . . . trying to find that out. All I can figure is that I misunderstood Allen's question and screwed it up.
>
> * * * *
>
> *I know I didn't know about Joe Wilson's wife till after the column* because when the column came out I went to my producer and said . . . look at this . . . how the heck did we not know that?

*Id.* Ex. U (quoting Ms. Mitchell) (emphasis added). *See also id.* Ex. V ("The fact is that I did not know before the Novak column cause I had interviewed Joe Wilson several times on Meet The Press and in none of those interviews did any of this come up on or off camera."). If obliged to testify in this case, Ms. Mitchell would so swear.

Under these circumstances, Defendant's contention that testimony about Ms. Mitchell's statements on *Capital Report* is admissible in evidence cannot withstand analysis. Because Ms. Mitchell would testify that she did not know that Ms. Wilson worked for the CIA prior to July 14, Defendant's only possible evidentiary use of this statement would be to attempt to impeach her testimony. However, it is well settled in the federal courts that Defendant may not properly call a witness he knows will not provide testimony helpful to his case, so that he may then evade the requirements of the hearsay rule and put before the jury what he claims to be a prior inconsistent statement by that witness. Such "subterfuge" is a long established "abuse" of the

4

Federal Rules of Evidence, and is strictly prohibited in the federal courts. *See United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984) (Posner, J.).[1]

In this Circuit, that prohibition is set forth plainly in *United States v. Johnson*, 802 F.2d 1459 (D.C. Cir. 1986). There, a store-owner was prosecuted for possession of cocaine with intent to distribute. To rebut his defense, the prosecution called one Halmon, who had been arrested for cocaine possession two weeks before Johnson. *See id.* at 1463. Halmon gave a signed statement to police at that time that he had been selling cocaine for Johnson. *See id.* In a hearing outside of the jury's presence, Halmon acknowledged that he had made the statement, but said that it was untrue. *See id.* Nevertheless, at trial, the prosecution called Halmon and, when he refused to implicate Johnson, published to the jury Halmon's post-arrest statement. *See id.* The Court of Appeals roundly condemned this tactic:

> [I]t was entirely inappropriate for the prosecution to call Halmon to the stand when it well knew that his live testimony, unlike his prior statement, would be favorable to the defendant. It is reasonable to conclude that the prosecution called Halmon not for any testimony he could be expected to give, but for the sole purpose of bringing about the admission of a post-arrest statement that, as the prosecution well knew or should have known, was not independently admissible. This conduct was improper.

*Id.* at 1466.

As the D.C. Circuit emphasized in *Johnson*, "[t]here is no authority, in the Federal Rules of Evidence or elsewhere," that permits a party to call a witness "who the party knows will not offer any relevant evidence – and then impeach that witness by introducing, under Fed. R. Evid.

---

[1] *See also United States v. Frappier*, 807 F.2d 257, 259 (1st Cir. 1986); *United States v. Zackson*, 12 F.3d 1178, 1184-85 (2d Cir. 1993); *United States v. Sebetich*, 776 F.2d 412, 428-29 (3d Cir. 1985); *United States v. Ince*, 21 F.3d 576, 579-81 (4th Cir. 1994); *United States v. Miller*, 664 F.2d 94, 97 (5th Cir. 1981); *United States v. Dye*, 508 F.2d 1226, 1234 (6th Cir. 1974); *United States v. Logan*, 121 F.3d 1172, 1174-75 (8th Cir. 1997); *United States v. Gomez-Gallardo*, 915 F.2d 553, 555 (9th Cir. 1990); *United States v. Peterman*, 841 F.2d 1474, 1479-80 (10th Cir. 1988); *United States v. Gossett*, 877 F.2d 901, 907 (11th Cir. 1989).

613(b), an earlier, hearsay statement favorabl[e] to that party's case." *Id.* In fact, "the case law is to the contrary. Impeachment evidence is to be used solely for the purpose of impeachment, and it may not be 'employed as a mere subterfuge to get before to jury evidence not otherwise admissible.'" *Id.* (citing *Webster*, 734 F.2d at 1192). Such "bootstrapping" is entirely "impermissible." *Id.* Defendant therefore cannot employ such a tactic in this case by calling Ms. Mitchell as a witness at trial and then attempting to "impeach" her testimony by questioning her about statements she made on *Capital Report*.

And, under such circumstances, the Court of Appeals has held repeatedly that a third-party witness such as Ms. Mitchell may challenge a subpoena seeking to elicit such inadmissible testimony. For example, in *United States v. Whitmore*, 359 F.3d 609 (D.C. Cir. 2004), the D.C. Circuit upheld this Court's order granting a journalist's motion to quash a similar subpoena *ad testificandum* issued to him because his testimony would not yield admissible evidence. *See id.* at 617. Similarly, in *United States v. North*, 910 F.2d 843, 888-92 (D.C. Cir.), *portions withdrawn and superseded on other grounds*, 920 F.3d 940 (D.C. Cir. 1990), the Court of Appeals upheld the district court's decision to grant a motion to quash a trial subpoena filed by President Reagan, a third-party witness in the criminal prosecution of Oliver North. *See id.* at 888. Looking to the principles of relevance under 17(c) established by *United States v. Nixon*, 418 U.S. 683 (1974), the district court held that North had failed to demonstrate that any information President Reagan could supply would be "material and essential" to the defense. *United States v. North*, 713 F. Supp. 1448, 1449 (D.D.C. 1989); *see also United States v. North*, 1989 WL 9087, at *1 (D.D.C. Jan. 30, 1989) (making similar determination regarding President George H.W. Bush). The Court of Appeals agreed. *See North*, 910 F.2d at 889; *see also United*

*States v. Ahn*, 231 F.3d 26, 37 (D.C. Cir. 2000); *United States v. White*, 899 F.2d 52, 1990 WL 42213, at *2 (D.C. Cir. 1990) (unpublished).

## CONCLUSION

For all of the foregoing reasons, Non-Party Movant Andrea Mitchell respectfully requests that the subpoena issued to her by Defendant be quashed in part.

Dated:   February 7, 2007          Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By: _____
    Lee Levine (D.C. Bar No. 343095)
    Adam J. Rappaport (D.C. Bar No. 479866)
1050 Seventeenth Street, N.W.
Suite 800
Washington, DC  20036
(202) 508-1100

Susan E. Weiner
National Broadcasting Company
30 Rockefeller Plaza
New York, NY  10112
(212) 664-2806

*Counsel for Non-party Movant Andrea Mitchell*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 7th day of February 2007, I caused a true and correct copy of the foregoing Motion of Non-Party Andrea Mitchell to Quash Subpoenas and Supporting Memorandum of Points and Authorities, to be served via electronic mail and first-class mail upon:

William H. Jeffress, Jr.
Alex Joseph Bourelly
Alexandra M. Walsh
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004-2400
Email: william.jeffress@bakerbotts.com,
alex.bourelly@bakerbotts.com, alex.walsh@bakerbotts.com

Joseph A. Tate
DECHERT LLP
2929 Arch Street
Cira Centre
Philadelphia, PA  19104
Email: joseph.tate@dechert.com

Theodore V. Wells, Jr.
James Lewis Brochin
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
1285 Avenue of the Americas
New York, NY  10019-6031
Email: twells@paulweiss.com

John DeWitt Cline
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104-1500
Email: jcline@jonesday.com

*Counsel for Defendant*

Patrick J. Fitzgerald
OFFICE OF THE UNITED STATES ATTORNEY
NORTHERN DISTRICT OF ILLINOIS
219 South Dearborn Street
Chicago, IL 60604
Email: patrick.j.fitzgerald@usdoj.gov

Kathleen Kedian
U.S. Department of Justice
1400 New York Avenue, N.W., Room 9422
Washington, DC 20005
Email: kathleen.kedian@usdoj.gov

Peter Robert Zeidenberg
U.S. Department of Justice
1400 New York Avenue, N.W., Room 12-405
Washington, DC 20005
Email: Peter.Zeidenberg@usdoj.gov

Debra R. Bonamici
Office of the Special Counsel
219 South Dearborn Street
Room 500
Chicago, IL 60604
Email: debra.bonamici@usdoj.gov


*Counsel for the United States*

/s/ Adam J. Rappaport
Adam J. Rappaport